UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRION LAFAYETTE,

    Petitioner,                                  Hon. Janet T. Neff

v.                                                     Case No. 1:10-CV-951

THOMAS BIRKETT,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Lafayette's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Lafayette's petition be **denied**.

## BACKGROUND

        As a result of events which occurred on March 12, 2008, Petitioner was charged with: (1) assault with the intent to commit murder; (2) discharging a weapon in a building; and (3) two counts of possessing a firearm during the commission of a felony. (Plea Transcript, Nov. 14, 2008, 3-9). Petitioner was also charged with being a second degree habitual felon, having been previously convicted of one felony. (Tr. 10). Pursuant to a plea agreement, Petitioner agreed to plead no contest (as an habitual felon) to assault with the intent to commit great bodily harm less than murder.

1

(Tr. 3-12). In return, the charges of assault with the intent to commit murder, discharging a weapon in a building, and possessing a firearm during the commission of a felony were dismissed. (Tr. 3-12). Petitioner was sentenced to serve 90-180 months (7.5-15 years) in prison. (Sentencing Transcript, December 19, 2008, 9). Asserting the following claims, Petitioner later moved in the Michigan Court of Appeals for leave to appeal his convictions and sentence:

> I. The trial court erred in denying Defendant's motion to withdraw his plea when Defendant was not guilty of the offense and was misinformed as to what his sentence would be.
>
> II. Defendant is entitled to resentencing because the statutory sentencing guidelines were misscored as to the offense variables, which affected the statutory sentencing guideline range.

The Michigan Court of Appeals denied Petitioner's motion for leave to appeal for "lack of merit in the grounds presented." *People v. Lafayette*, No. 291063, Order (Mich. Ct. App., May 11, 2009). Asserting the same two claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Lafayette,* No. 139187, Order (Mich., September 28, 2009). On September 28, 2010, Petitioner initiated the present action in which he asserts the two claims identified above.

**STANDARD OF REVIEW**

Lafayette's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

2

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable

3

application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

4

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not

5

addressed by the state courts).

In the present case, while Petitioner presented his habeas claims to both the Michigan Court of Appeals and the Michigan Supreme Court, neither court accepted review of Petitioner's appeals. Thus, neither court adjudicated the merits of Petitioner's claims. Accordingly, this Court must evaluate Petitioner's claims *de novo* as there is no state court decision or resolution to which this Court can defer.

## ANALYSIS

**I.** **Voluntariness of Petitioner's Guilty Plea**

At sentencing, Petitioner moved to withdraw his no contest plea. (Sentence Transcript, December 19, 2008, 3-4). Petitioner indicated that his attorney told him he would only be incarcerated for "23 months" and that he "ain't really digging" the prospect of spending a much longer period of time in prison. (Tr. 3). Petitioner's motion to withdraw his plea was denied. (Tr. 4). Petitioner now asserts that because he "was misinformed as to what his sentence would be" his decision to plead no contest was not intelligent and voluntary.

A no contest plea, like a guilty plea, is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and

intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

As noted above, the *Boykin* Court identified certain rights which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea

7

will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question presented by Petitioner's claim is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading no contest. Rather, the question is whether Petitioner's decision to plead no contest was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a plea of no contest satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

At the plea hearing, the trial judge discussed the matter at length with Petitioner, Petitioner's counsel, and the prosecuting attorney. The trial judge confirmed that in return for pleading no contest to assault with the intent to commit great bodily harm less than murder and being an habitual felon, the charges of assault with the intent to commit murder, discharging a weapon in a building, and possessing a firearm during the commission of a felony would be dismissed. (Plea Transcript, November 14, 2008, 3-12).

The trial judge explained to Petitioner the potential penalties he faced for the various

crimes with which he was charged. Specifically, the trial judge informed Petitioner that he faced life in prison if convicted of assault with the intent to commit murder, four years in prison if convicted of discharging a weapon in a building, and two years in prison if convicted of possessing a firearm during the commission of a felony. (Tr. 3-4). Petitioner was also informed that if he pleaded no contest to assault with the intent to commit great bodily harm less than murder he faced a maximum penalty, as an habitual offender, of 15 years in prison. (Tr. 3-4).

Petitioner acknowledged that he received an advice of rights form detailing the rights he would be surrendering by pleading no contest. (Tr. 5). Petitioner acknowledged that he understood and wished to waive these rights. (Tr. 5). The trial judge confirmed that there was no sentencing agreement as part of the plea bargain. (Tr. 6). Petitioner stated that he understood the terms of the plea agreement and that such were acceptable. (Tr. 7). Petitioner stated that he had not been threatened, forced, or otherwise compelled to plead no contest. (Tr. 9). Petitioner further stated that he had not been promised "anything other than the plea bargain." (Tr. 9). Finding that Petitioner's no contest plea was "made freely, understandingly, and voluntarily," the court accepted Petitioner's plea. (Tr. 12).

In light of these facts, Petitioner's argument that his decision to plead no contest was not made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences" is unpersuasive. There is nothing in the record to support Petitioner's contention that his attorney told him that if he pleaded no contest he would serve no more than 23 months in prison. On the other hand, Petitioner was clearly informed that if convicted of assault with the intent to commit murder he faced life in prison, but that if he accepted the plea agreement he would face no more than fifteen years in prison. Petitioner acknowledged that he was

informed of and understood the various rights he would be surrendering by pleading no contest.

In sum, the Court concludes that Petitioner obtained an enormous benefit from the plea agreement into which he entered and his decision to accept the plea bargain and plead no contest was made voluntarily, knowingly, and intelligently. Accordingly, this claim raises no issue on which habeas relief may be granted.

**II.**        **Sentencing Claims**

Petitioner asserts that his sentence is infirm for two reasons: (1) he never plead guilty to being an habitual felon; and (2) the trial judge improperly scored several of the offense variables in the calculation of his sentencing guidelines score.

A.        Calculation of the Offense Variables

Petitioner asserts that the trial judge incorrectly scored several of the relevant offense variables resulting in an inaccurate sentencing guidelines score. Petitioner asserts that the trial judge's errors violate the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004).

First, to the extent that Petitioner's claim is interpreted as asserting the claim that the scoring of the relevant offense variables is simply inaccurate in violation of Michigan law, such claim is not cognizable. *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding). Petitioner's reliance on *Blakely* is equally unavailing.

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Petitioner asserts that his sentence violates this rule because the trial judge relied upon facts which were neither admitted nor proven beyond a reasonable doubt when scoring several of the offense variables.

In *Blakely*, the defendant pleaded guilty to second degree kidnaping involving domestic violence and use of a firearm. *Blakely*, 542 U.S. at 298-99. In so doing, Blakely admitted "the elements of second-degree kidnaping and the domestic-violence and firearm allegations, but no other relevant facts." *Id.* at 299. Washington law provided that the "standard range" to which a defendant, convicted of this particular offense, could be sentenced was 49-53 months. However, the sentencing court was permitted to impose a sentence in excess of the "standard range" if it found "substantial and compelling reasons justifying an exceptional sentence." Before imposing an "exceptional sentence," the sentencing court was required to "set forth findings of fact and conclusions of law supporting it." *Id.*

The State recommended that Blakely receive a "standard range" sentence of 49-53 months. *Id.* at 300. The sentencing court rejected this recommendation, however, and, finding that Blakely acted with "deliberate cruelty," imposed an "exceptional" sentence of 90 months. *Id.* at 300-01. As the *Blakely* Court recognized, under Washington law, the court "could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea," but instead could do so only based on the court's additional determination that Blakely acted with "deliberate cruelty." *Id.* at 304. The Court held, therefore, that this sentence violated Blakely's Sixth

11

Amendment right to trial by jury because it was predicated on facts that were neither admitted by Blakely nor found by a jury. *Id.* at 301-05.

The *Blakely* Court, however, made clear that its holding applied only to "determinate-sentencing schemes" such as that employed by the State of Washington. *Id.* at 308-09. The Court recognized that *indeterminate* sentencing schemes do not run afoul of the Constitution because while such schemes may sanction "judicial discretion" in sentencing, they do not accomplish such "at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty." *Id.* at 308-09. As the Court recognized:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence - and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence - and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 309.

As is well recognized, the State of Michigan employs an indeterminate sentencing scheme. *See, e.g., Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *Porter v. Bauman*, 2011 WL 3501814 at *5 (W.D. Mich., Aug. 10, 2011).

Petitioner was convicted of assault with the intent to commit great bodily harm less than murder. Under Michigan law, conviction of this offense is punishable by imprisonment for "not more than 10 years." *See* Mich. Comp. Laws § 750.84. Because Petitioner had previously been

convicted of a felony, conviction for assault with the intent to commit great bodily harm less than murder subjected Petitioner to a possible fifteen year prison term. *See* Mich. Comp. Laws § 769.10(1)(a). Petitioner received a sentence of 7.5 to 15 years in prison which is entirely consistent with Michigan law. Thus, when Petitioner committed his crimes he knew that he could possibly receive a sentence of this magnitude. Because Petitioner received a sentence within the range permitted by Michigan law as a result of his convictions, any additional fact-finding in which the trial court may have engaged did not violate Petitioner's rights under *Blakely* or the Sixth Amendment. Thus, this claim raises no issue on which habeas relief may be granted.

### B. Habitual Felon

At the plea hearing, Petitioner's counsel conceded that Petitioner had previously been convicted of a prior felony and "would make this plea as a hab - second offender, habitual second." (Plea Transcript, November 14, 2008, 3-7). Petitioner himself, however, never affirmatively pleaded guilty to being an habitual offender or otherwise conceded such. Petitioner asserts that he is entitled to relief because "he never pled to the habitual offender" charge. Petitioner does not challenge the determination that he was an habitual offender, but instead simply asserts that because a jury did not determine beyond a reasonable doubt that he committed a prior felony, the finding that he was an habitual felon and the associated increase in his maximum sentence (from ten to fifteen years) violated his Sixth Amendment right to trial by jury.

As noted above, the Supreme Court has held that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington*, 542

U.S. at 301 (emphasis added). Thus, the *Blakely* Court, when identifying the issues which must be submitted to a jury and proven beyond a reasonable doubt, drew a distinction between the fact of a prior conviction and any other fact that increases the maximum penalty for a crime. Courts have since recognized this distinction and rejected claims that determinations that a criminal defendant committed a previous crime must be submitted to a jury and proven beyond a reasonable doubt. *See, e.g., United States v. Beasley*, 442 F.3d 386, 390-91 (6th Cir. 2006) ("the Supreme Court has uniformly excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt"); *United States v. Alexander*, 2012 WL 48214 at *11 (6th Cir., Jan. 10, 2012) (same); *United States v. Young*, 2007 WL 4118965 at *2 n.2 (W.D. Mich., Nov. 16, 2007) (same). Accordingly, this claim is without merit and presents no issue on which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Lafayette's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                        Respectfully submitted,

Date:  June 22, 2012                             /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge